CHARLES E. BARBER *vs.* A. I. AMUNDSON *et al.*

Argued Jan. 5, 1893.  Decided Jan. 25, 1893.

**Possession of Chattels Mortgaged.**

An officer levying an execution upon a mortgagor's right and interest in mortgaged chattels, for the purposes of a sale, as authorized by Laws 1883, ch. 60, § 1, after default, but before possession has been taken by the mortgagee, has the right to take the chattels into his actual custody, and, as against the mortgagee, to detain the same for the time prescribed by law for bringing them to sale.

Appeal by plaintiff, Charles E. Barber, from an order of the District Court of Chippewa County, *Powers, J.,* made August 20, 1892, denying his motion for a new trial.

On September 5, 1891, J. Strootman made and delivered to the plaintiff his promissory note for $200 and interest, due three months thereafter, and to secure its payment he, on that day in good faith mortgaged to plaintiff six hundred bushels of wheat stored in a granary on the northeast quarter of section twelve (12,) T. 118, R. 39, in the Town of Havelock in Chippewa county.   The mortgage was duly

filed. Thereafter, on September 12, 1891, the defendant Charles A. Stoppe commenced an action in the District Court against said Strootman upon contract and obtained a writ of attachment against his property, and the defendant, A. I. Amundson, as sheriff, thereunder attached and took into his possession two hundred and twenty-five bushels of the wheat so mortgaged. He found the wheat in the granary in Strootman's possession. On December 24, 1891, Stoppe recovered judgment in that action against Strootman for $151.80, and caused a writ of execution to be issued thereon and delivered to Amundson for service. While the sheriff so held the wheat under the attachment the mortgagee commenced an action against the sheriff and replevied the wheat, but in November, 1891, that action was dismissed and the coroner returned the wheat to the sheriff. Afterwards, on January 4, 1892, while the sheriff held the two hundred and twenty-five bushels of wheat under the writ of execution, the mortgagee duly demanded possession of it under his mortgage then past due, and being refused he commenced this action and caused this wheat to be again taken by the coroner from the sheriff under a writ of replevin herein, but it was rebonded and again returned to the sheriff. By stipulation Stoppe was made a defendant herein with the sheriff. The issues were brought to trial May 10, 1892, before the court and a jury. At the close of the plaintiff's evidence the court on defendant's motion dismissed this action on the ground that as the sheriff took possession of the wheat before plaintiff took it on his mortgage, he had the right to retain the possession and sell the wheat on execution, but subject to the mortgage. Plaintiff excepted to this decision and moved for a new trial. Being denied, he appealed.

*C. A. Fosnes* and *L. H. Bentley*, for appellant.

This action as it is now presented involves a construction of 1878 G. S. ch. 66, § 309, as amended by Laws 1883, ch. 60, § 1. The contention of the plaintiff is, that the construction given it by the court below is erroneous. As soon as default was made in payment of the mortgage, the mortgagee had the right to take possession of the property covered by it, wherever it could be found; and that the

plaintiff's right of possession in this case is superior to that of the sheriff.   Under the common law, before the amendment of 1883, no right to levy upon mortgaged property existed.   It is purely a statutory right, and hence must be strictly construed.   The statute provides that the right and interest of the mortgagor may be sold on execution; no more can be sold.   All the interest the mortgagor had in the property in dispute was a right to its possession until default was made in the mortgage; after default he had no right.   The only right which can be sold, I maintain, is the right of the mortgagor to the possession of the property until default, and his right to pay the mortgage and redeem the property.   The purchaser at the execution sale cannot even in such cases take possession of the property until he complies with the terms and conditions of the mortgage, which as a matter of course would be the payment of the mortgage debt. *Leadbetter* v. *Leadbetter,* 125 N. Y. 290.

The fact that the attachment was made upon the property in the present case before default, does not place the defendants in any better position, for the reason that the law does not authorize the attachment of mortgaged property, and that therefore they acquired no rights under it.   The distinction between attachment and execution is plain; an attachment is made at the commencement of the litigation, and property might be tied up in court for years, while an execution is levied upon the property after judgment has been obtained at the end of the litigation, and hence the right under it is generally settled in a few days.   It can be plainly seen why the Legislature should refuse to extend the remedy of creditors so as to include attachments.   *Saxton* v. *Williams,* 15 Wis. 292; *Tannahill* v. *Tuttle,* 3 Mich. 104; *Sperry* v. *Ethridge,* 70 Iowa, 27; *Randall* v. *Cook,* 17 Wend. 53; *Peckinbaugh* v. *Quillin,* 12 Neb. 586; *Wood* v. *Weimar,* 104 U. S. 786; *Rankine* v. *Greer,* 38 Kan. 343; *Ament* v. *Greer,* 37 Kan. 648.

*L. H. Schellbach,* for respondent.

There is no dispute as to the facts in this case.   But one question of law is involved, and that is the construction of Laws 1883, ch. 60, § 1.   The court below construed the provision in accordance with

the plain meaning thereof, and in this he committed no error. In Minnesota all the right a mortgagor has in mortgaged chattels is an equity of redemption. It is an equity of redemption before default as well as after default and condition broken. This statutory provision giving the mortgagor's creditors this new remedy of seizing equitable interests, was intended to remedy an existing evil, whereby creditors were enabled to collect honest debts, from persons keeping their property mortgaged. The statutory provision in reference to this matter is as much a part of the appellant's mortgage as the insecurity clause, or the default provision. Mortgagees take their mortgages with this provision in favor of creditors staring them in the face, and therefore cannot be heard to say that the construction given to this statute by the court below destroys vested rights. The broad language of this statute gives the right to seize mortgaged property on execution before or after default while the mortgagor has a subsisting equity of redemption therein. If the Legislature did not intend this, they would have inserted the words "before default or condition broken."

The provision of our statute making pledged property liable to seizure and sale is in line with defendant's position. Is there any doubt but that the pledgee's right of possession could be interrupted by the levying officer? Only one method of making seizure is known in this state. The officer must not only seize, but he must keep possession, in order to preserve his lien, and sell the property exposed to view of bidders. The following cases are cited to sustain our position: *Slifer* v. *State ex rel.*, 114 Ind. 291; *State* v. *Milligan*, 106 Ind. 109; *Wilson* v. *Montague*, 57 Mich. 638; *King* v. *Hubbell*, 42 Mich. 597.

Collins, J. The only question herein is as to who is entitled to the possession of certain grain,—the plaintiff, who, as a mortgagee, claims the right of possession under and by virtue of the conditions of a mortgage in the usual form, default having been made by the mortgagor's failure to pay the note thereby secured at maturity, or defendant sheriff, who seized the grain after such default, but before the mortgagee had taken possession, and levied on the mortgagor's

right and interest therein, by virtue of an execution issued upon a judgment duly rendered against said mortgagor. The good faith and sufficiency of the mortgage, and the regularity of the execution and the proceedings on which it was based, stand admitted, and it will have been observed that the levy was not hostile to the mortgage, but was expressly made subject to it. The sheriff defends his course, and his right to actual possession pending the sale, under the provisions of Laws 1883, ch. 60, § 1, in connection with the statute which regulates and prescribes the manner in which personal property capable of manual delivery shall be levied on and sold. Section 1, *supra*, which was amendatory of 1878 G. S. ch. 66, § 309, explicitly authorizes a sale upon execution of the right and interest of a mortgagor in mortgaged goods and chattels, the purchaser at such sale acquiring all such right and interest, and being entitled to possession of the property, on compliance with the terms and conditions of the mortgage. This statute is silent, however, as to the manner in which a levy may be made upon the mortgagor's right and interest, or a sale made; so that we are compelled to construe it, if possible, so as to make it effectual, and also with reference to the statute directly pertaining to seizures and sales of personalty upon execution. The object of the law is to secure, as far as practicable, the application of the mortgagor's property to the satisfaction of his debts, secured and unsecured, upon principles of justice to both debtor and creditor; and it must not be rendered inoperative, or a nullity, by uncalled-for construction. It clothes an officer holding an execution against a mortgagor with power to sell his right and interest in the mortgaged chattels, which is nothing more or less than the equity of redemption, and in so doing it inferentially authorizes such officer to perform all acts, and to take such steps, as may be requisite to bring the property to a sale in conformity with existing statutes; and, of course, the mortgagee's rights are subject to it. In at least two of our sister states a similar statute exists, and in both it has been held that an officer levying an execution upon the mortgagor's interest in mortgaged chattels has a right to take possession of the same from the mortgagor, and, as against the mortgagee, detain them, in safe and convenient custody, for the time

prescribed by law for bringing them to sale on the execution. *Cary* v. *Hewitt*, 26 Mich. 228; *Louthain* v. *Miller*, 85 Ind. 161, and cases. See, also, *Wilson* v. *Montague*, 57 Mich. 638, (24 N. W. Rep. 851;) *State* v. *Milligan*, 106 Ind. 109, (5 N. E. Rep. 871;) *Fugate* v. *Clarkson*, 2 B. Mon. 41; *Arnold* v. *Chapman*, 13 R. I. 586; Jones, Chat. Mortg. 556*a*.

The statutes regulating the levy upon and sale of personal property, generally, on execution, require that it be taken into the custody of the officer, if it be capable of manual delivery, as this was, and, when sold, that it be within the view of those attending the sale. This custody must be such as to enable the officer to retain and assert his power and control over it. 1878 G. S. ch. 66, § 272, providing for a levy upon articles which, by reason of their bulk or other cause, cannot be immediately removed, does not apply, because nothing whatsoever stood in the way of the removal of the grain in question, nor is it now claimed that the defendant officer had no right to remove and take it into his actual possession when making the levy. The only contention is that, after demand by the mortgagee, he was without authority to retain it in his possession until a sale could be made upon the execution. In view of the unquestioned authority conferred, to levy upon and sell, the general liability of the officer, and his statutory powers and duties in respect to personalty levied upon by him, it seems obvious that possession of the grain was indispensable to the safe and proper enforcement of the law. If the officer cannot be allowed to take and retain this possession, there is no statutory method for him to pursue, either as to levy or sale. There need be no infringement upon the rights of the mortgagee, if timely sale be made. The purchaser thereat is not entitled to possession until he complies with the terms and conditions of the mortgage, and substantial justice will be promoted if the property be held as herein indicated. The right of an officer to seize and hold mortgaged chattels after the same have been reduced to the possession of a mortgagee for the purposes of foreclosure is not considered at this time.

Order affirmed.

(Opinion published 54 N. W. Rep. 733.)