## ANTON WALLERBECK AND ANOTHER v. IRA L. HAAVEN AND OTHERS.[1]

October 20, 1933.

No. 29,523.

Ole J. Vaule and William P. Murphy, for appellants.
W. J. Kirkwood and F. A. Grady, for respondents.

LORING, Justice.

In an action for conversion the defendants had a directed verdict. Plaintiffs have appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial.

December 18, 1929, R. T. Adams recovered a judgment in the municipal court of East Grand Forks against Helleck Volden. A transcript was filed in the district court of Polk county and the judgment and all rights thereunder assigned to defendant Krutzner. August 8, 1932, an execution thereon was issued and placed in the hands of the sheriff of Polk county. A deputy sheriff on that day made what the defendants claim was a levy upon a Pontiac automobile owned by Volden. The facts in regard to what occurred at

[1] Reported in 250 N. W. 565.

the time of the claimed seizure seem to be undisputed. The deputy testified:

"Well, I told Mr. Volden we had an execution and instructions were to levy on his car and told him that is what we would have to do, and he asked me what that meant, and I told him we would have to take possession of the car, probably have to take it into Crookston and sell it, and he then spoke as if he would like to make a settlement, and he said, 'Do you suppose this could be settled?' 'Yes,' I said, 'I think it could be; you can take the matter up with Mr. Krutzner and see if you can arrange a settlement, but,' I says, 'I will have to levy on the car, and if you wish to see Mr. Krutzner to make arrangements for settlement I will levy on the car and then leave the car with you as our agent and take your receipt for the same.'"

The deputy, accompanied by Volden, went to the shed where the car was standing and there entered a description of its motor, serial, and license numbers on his return. The deputy served a copy of the execution and return upon Volden. He then took a receipt for the car from Volden and left it with him. The next evening Volden went to Crookston and saw Mr. Ole J. Vaule, an attorney at law, who represented the plaintiffs in the matter of a claim they held against Volden and which had been secured by a mortgage upon a car previously owned by Volden. He told Mr. Vaule that the deputy had been out to his farm and was going to take the car if settlement was not made. He testified once that he took to Mr. Vaule the papers served on him by the deputy. Later he denied taking the papers that evening and could not remember whether the papers were served on him.

August 9, 1932, Volden executed a chattel mortgage on the automobile in question to the plaintiffs for the preëxisting debt. The mortgage was filed August 10, 1932, and thereafter on August 11, 1932, the automobile was taken by the sheriff and August 27, 1932, sold under the levy made August 8, 1932. The plaintiffs then brought this suit in conversion. The defendants answered separately. The case was tried to a jury, and both plaintiffs and defend-

ants moved for a directed verdict at the close of the testimony. The motion of plaintiffs was denied and that of the defendants granted.

■ A careful scrutiny of the record fails to show any genuine dispute as to Mr. Vaule's knowledge of what occurred at the time of the claimed levy. His knowledge was, of course, chargeable to plaintiffs, and it was amply sufficient to put them on inquiry even if every detail of the levy was not disclosed to him. Rowe v. Page, 54 N. H. 190. Mr. Vaule, being of counsel, did not testify. We are therefore not confronted with a question of the validity of the levy as against the rights of bona fide purchasers or mortgagees who have no knowledge or notice of the levy. If the levy was good as against the judgment debtor, the subsequent mortgagees with full knowledge of what was done to perfect it are in no better case. Barnard v. Towne, 70 N. H. 154, 46 A. 687.

The plaintiffs earnestly insist that the acts of the deputy did not constitute a levy and must yield to the rights of the mortgagees even though they may have had knowledge of the acts of the deputy or sufficient knowledge to put them upon inquiry. They claim that leaving the car in the possession of the owner as receiptor was fatal to the validity of the levy.

Volden at first admitted that the deputy read to him the receipt for the car upon which his signature appears and that he signed it knowing it was a receipt. Later he attempted to break the force of this admission, but on the whole record it must be taken as conclusive that he knowingly receipted for the car.

The plaintiffs cite Wilson v. Powers, 21 Minn. 193, and Barber v. Amundson, 52 Minn. 358, 54 N. W. 733, as to the necessity of the sheriff taking possession and custody of personal property in order to constitute a valid levy. The Wilson case involved the rights of a chattel mortgagee who had no knowledge or notice of the purported levy upon wheat for which no receipt was given and of which the sheriff never had taken custody. The Barber case involved the right to levy upon personal property subject to a mortgage. Consequently neither of those cases is in point.

In City F. & S. Co. v. Nichols Roofing Co. 207 Iowa, 860, 223 N. W. 751, the levying officer exercised no dominion over the prop-

erty, did not constitute the person in possession his agent, nor take a receipt. In the case at bar the deputy's acts at the farm constituted an exercise of dominion, a taking into custody. He did everything necessary to a good levy except taking the property away with him. He was prepared to do that, but left it with the debtor to give him an opportunity to settle with his creditor.

The plaintiffs, in support of their contention, cite Freeman on Executions, but that work definitely states the rule in the majority of states to be clear that if the levy is otherwise perfect it will not be invalidated by leaving the property with the defendant, and states:

"But the fact that the defendant is still in possession does not authorize him to sell the property, nor does it render the property liable to seizure under subsequent writs. The levy is, for all purposes and against all persons, as binding as though the sheriff was personally in possession of the property." 2 Freeman, Executions (3 ed.) § 261,

citing among a great number of cases that of Horgan v. Lyons, 59 Minn. 217, 60 N. W. 1099, where this court said that the sheriff, after having made the levy, might leave the property in the hands of the defendant, taking a receipt therefor. In that case a receipt was taken from a clerk in the employ of the execution defendant. In the case at bar we need not go so far as does the text of Freeman on Executions in the quoted statement. We are not here dealing with bona fide purchasers or mortgagees without notice of the levy.

In Quackenbush v. Henry, 42 Mich. 75, 79, 3 N. W. 262, 265, the supreme court of Michigan said:

"But it is not necessary that an assistant of the officer should be left in possession of the goods, or that the goods should be removed; they may be left in the custody of the defendant, at the risk of the plaintiff or of the sheriff, or on obtaining, as is customary, a receiptor for their delivery on demand."

The Michigan court is there quoting from the New York court in the case of Beekman v. Lansing, 3 Wend. 446, 20 Am. D. 707.

In this country the general rule appears to be that it is not necessary that the officer levying an execution on chattels capable of

manual seizure should actually remove them when he takes possession of them. "The levy is not vitiated by the leaving of the property in the possession of the debtor, unless power to dispose of it is granted." 23 C. J. 437. See also First Nat. Bank v. Corporation Comm. 161 Md. 508, 157 A. 748, 86 A. L. R. 1407, and note, 1412, 1418, 1424. This rule would appear to be sound at least against the debtor or one having knowledge of the levy so made or knowledge of sufficient facts to put him upon inquiry, as in the case at bar. We think the trial court was correct in directing a verdict for the defendants.

■ The court sustained an objection to the plaintiffs' offer in evidence of the chattel mortgage which the plaintiffs previously had upon the Chrysler car formerly owned by Volden. In the state of the record in regard to the plaintiffs' knowledge of the situation, this mortgage was immaterial and properly excluded.

The order appealed from is affirmed.