HOMER A. QUACKENBUSH, PETER FERGUSON AND CHARLES FERGUSON v. STEPHEN HENRY.

42 75
118 538

*Levy of execution—Exemptions—Identification of articles.*

A levy of execution is not valid unless made before the writ is returnable.

A levy of execution must be so made as to identify or give means of identifying the property levied on so as to make it chargeable to the officer; and property not levied on cannot be afterwards claimed. There must be manual seizure, or such assertion of control as may be made effectual, if necessary, in order to bring and keep the property within the dominion of the law for sale on execution only. An intention to allow it to be disposed of by the execution debtor is not the intention required.

Whether the proceedings required by Comp. L., ch. 192, for setting aside property exempt from execution do not call for some farther identification of the property than where seizure can be made of a mass of property not subject to such reduction—Q.

It is for the jury to determine from evidence and under instructions, whether the acts required to effect a valid levy have been carried out, even though the levy is indorsed on the execution, if the return is not explicit and the extent of the levy is uncertain.

Error to Lapeer. Submitted Oct. 4. Decided Oct. 30.

REPLEVIN. Defendants bring error.

*W. B. Jackson* for plaintiffs in error.

*Geer & Williams* for defendant in error. Actual possession is not necessary to a valid levy as against the execution debtor and other parties with notice; it is enough to give notice to the debtor and indorse the levy on the execution, *Roth v. Wells,* 29 N. Y., 472.

CAMPBELL, C. J. Defendant in error, Stephen Henry, recovered a judgment in replevin against plaintiff in error Quackenbush, and waived a return. He then obtained

a money judgment for the amount of certain executions which he claimed to have held against one Parmlee, and under which he set up that he had levied on the property in question. The suit, which is now removed by writ of error into this court, is on the replevin bond, and is defended on the ground that the sureties have a right,—which is not disputed by Henry's counsel,—to show the invalidity of the execution claims as against other rights asserted on the trial.

The controversy turned on several different points, the most important of which were the claim that no lawful levy was actually made except on the 19th of September, 1874, when Henry levied an attachment in favor of one John P. Hensien against Parmlee, which afterwards went to judgment and is owned by Peter Ferguson; and the further claim that Charles Ferguson owned an interest in the property under rights originating before there was any valid levy.

The property replevied consisted of various kinds, and as some questions arise concerning the levies upon which the description becomes material, it is proper to refer to them. It included (1), a stock of hardware in a store in Imlay City; (2), an iron safe; (3), a quantity of farm implements and machinery. These when replevied were in two different stores.

The court below, in charging the jury, after some general remarks, undertook to tell the jury in effect that the executions were actually levied, and that the plaintiff Henry "having made his levies, entered the same upon the executions, and then left the goods in possession of the defendant. This he had an undoubted right to do. A sheriff or constable can go and take possession of personal property by his levy, and take it away from the possession of the defendant, or he may take a receipt, or he may leave it in the possession and care of the defendant; but if he does so, he does it at his peril. If the defendant should proceed and sell that property while he was so in possession of it to a purchaser without notice, the purchaser would get a good title to the property, and the officer would be without redress against

the purchaser. After Henry made the levies by virtue of these executions, he left the property with the defendant in the executions, and he did not take it into his possession until September, when the writ of attachment was placed in his hands, and then he went and took possession of it. It is the duty of the officer to have the property in his possession, so any person would know what property is taken on the execution. Henry testifies that he took the property into his possession by virtue of the executions and the attachment. I shall charge you that these levies as between him and Parmlee were good, and that if Peter Ferguson or Quackenbush who was acting as clerk, knew of those levies,— knew that the officer was there and made those levies, by virtue of these executions they could not obtain any additional rights over Parmlee as against Henry, and his rights under those executions; but if they were innocent and had no knowledge of them, they had the same rights that you or I would, who knew nothing about these levies being made."

One of these executions was issued and levied September 18, 1874, which was sometime after the rights under which Charles Ferguson claims accrued, if they accrued at all. None of the other executions could have been lawfully levied or enforced unless by something done before they were returnable. The validity, therefore, of the alleged levies for any purpose depended on whether they were made during the life of the writs. It becomes therefore a vital question whether these levies were made as assumed, and whether, if there was evidence on the subject, the court could properly take that fact for granted. There was—as the court says—conflicting evidence as to who was in possession of the goods in August and up to the levy of the attachment. One of these executions was issued and levied during this interval, and was made a ground of recovery in this action. Henry, in his testimony, shows that Quackenbush was in the store before he levied the Hensien attachment, and that witness informed him about having levied under the executions, and that the matter must be settled up or he would take possession under the levies. This Quackenbush denies, and Henry does not

in his testimony indicate that any action was had under the latest execution, which would have amounted to a levy if the property had not been already under levy. The early levies were evidently the ground of all his right.

Upon those he was asked to give a full statement of what he did, and it also appears to some extent affirmatively what he omitted. The · statement of the levies in the bill of exceptions refers only to the stock of hardware, although Henry says he informed Quackenbush in August that he also claimed what was in the warehouse. The safe is not included in any of the descriptions, and there is nothing to show on the record that any of the farm machinery or implements were levied on.

The only acts that Henry testifies to in making the execution levies are thus mentioned: "I made the levy and indorsed the levy on the execution at the time, and notified Parmlee." And in speaking of the attachment levy, which was regular, and under which he took actual possession, he says: "I had the property appraised. I had never had it appraised before that. I did not set apart any part of that property as exempt property. I cannot tell why I did not."

It appears that no change was made and no interruption was had in the business during Parmlee's possession, which continued from February to August, and that Henry was willing to let Quackenbush continue then if matters were settled up. And when he made his first levy, Parmlee, as he testifies, said: "I can pay these matters up if you will give me time."

It may be open to inference, at least, that Henry did not give Parmlee any notice which was designed to stop the ordinary business and sales.

Whatever may have been the real facts of the case, the judge could not rightly decide as a matter of fact that there was a levy of any kind, unless an endorsement on the writ, and notice of the claim of levy would by themselves and in spite of other facts make it complete. And even if this were so, inasmuch as the entire prop-

erty replevied by Quackenbush and taken under the attachment was not covered by the former levies, the instruction, which made no reference to the extent of the property, was misleading. There is nothing to show whether the safe and the farm implements and machinery would not have made a reduction which would have changed the verdict.

But the rule laid down concerning levies was too loose. The English rule is rather more strict than the general American rule, and requires a continued and actual possession, the voluntary relinquishment of which is an abandonment of the levy. The Supreme Court of New York in *Beekman v. Lansing*, 3 Wend., 446, lays down this rule, which has not, we think, been departed from since, although there are *dicta* in some later cases, which standing alone, might favor a more careless practice. After mentioning the English doctrine, MARCY, J. proceeds: "We are not disposed to go this length, but are of opinion that the officer should enter upon the premises where the goods of the defendant are, and take actual possession of them, (if they are such of which possession may be taken.) The goods should be brought within his view, and subjected to his control, (*Haggerty v. Wilber*, 16 Johns. R., 288;) and it is proper also, if not necessary, that an inventory should be taken of them; the officer should assert his title to the goods by virtue of the execution; and we are inclined to think that his acts, as to the asserting of his rights and the divesting of the possession of the defendant, should be of such a character as would subject him to an action as a trespasser but for the protection of the execution; they should be public, open and unequivocal, and nothing should be done by him to cast concealment over the transaction. But it is not necessary that an assistant of the officer should be left in possession of the goods, or that the goods should be removed; they may be left in the custody of the defendant, at the risk of the plaintiff or of the sheriff, or on obtaining, as is customary,

a receiptor for their delivery on demand." Pages 450, 451. In *Camp v. Chamberlain*, 5 Denio, 198, which is cited as a correct exposition in *Barker v. Binninger*, 14 N. Y., 270, it is said: "In order to constitute a valid levy, as to third persons, the goods must not only be within the view of the officer, but must be subjected to his control. He 'must take actual possession,' which, although the goods are present, can only be done by manual acts, or by an oral assertion that a levy is intended and which is acquiesced in by those who are present and interested in the question."

According to the most liberal rule we have been able to discover, the levy must be so made that it identifies or gives means of identifying what is levied on, so that any property levied on may be made chargeable to the officer, and property not levied on cannot be subsequently claimed. It must be seized manually or by assertion of control that may be made effectual, if necessary, and this to bring and keep it within the dominion of the law, for sale on execution, if needed, and for no other purpose. An intention to allow it to be disposed of by the execution debtor as his own, is not the intention required. It is also a matter worthy of consideration whether the proceedings required by our statutes to set aside exempt property do not require something more to identify the property covered by the levy than where a seizure can be made of a mass of property not subject to reduction in that way.

While we cannot determine—as we think the court below could not—whether there was here a valid levy at all, we think the record left that question as one very seriously open to dispute; and the extent of property levied on was still further in doubt. As to any property not under levy, the rights of the parties to deal with it are very different from what they might be otherwise. We therefore abstain from discussing the rules of fraud and capacity to deal with the property in dispute, which in some respects and in some aspects of

the case may be open to criticism. Until the validity and extent of the levies are disposed of, the remaining questions are variable.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.