CHARLES T. FLETCHER ET AL. v. FRED H. ALDRICH, KALKASKA CIRCUIT JUDGE.

[See 78 Mich. 176.]

*Sheriffs' fees—Custody of attached property—Estoppel.*

1. A sheriff is not entitled to compensation for his *personal* custody of attached property.

    So *held*, where the property was stored in a building, but no keeper employed, and the sheriff was paid his statutory fees and his disbursements for rent, and was then allowed $10 per month for custodian's fees by the court.

2. Where after contesting the allowance of a claim of a sheriff for fees as custodian of attached property, which were allowed by the court, the attorney for the contestants directed one of the attorneys for the sheriff to draft the required order under the findings of the court, to the entry of which he assented, and then sought to vacate the order by *mandamus*, the contestants cannot be held to be estopped from pursuing such remedy by such action on the part of their attorney, they being powerless to invoke such remedy until the order was entered.

3. The following general propositions are summarized from the opinion of Mr. Justice LONG:

*a*—In order to entitle a party to insist upon an estoppel, he must be able to show that the other party has done or represented something which has had the effect to deceive and mislead him, and which renders it inequitable for the right of such other party to be enforced against him; citing *Crane v. Reeder*, 25 Mich. 303.

*b*—An officer in possession of attached property is bailee for all of the parties interested, and must use due diligence to safely keep it to satisfy the execution, but he is not an *insurer*, and is not, like a common carrier, answerable for its loss by fire. He is not responsible beyond reasonable watchfulness, precaution, and the employment of proper means of security. He should, however, be held to greater care than owners usually take of their property, because goods so held are more liable to be molested than if not under seizure.

*c*—The right of a sheriff to fees is derived from and depends upon the statute; citing How. Stat. § 9017; *Peck v. Bank*, 51 Mich. 354; *Bank v. Judge*, 54 Id. 306; *Burk v. Webb*, 32 Id. 182; *Wilcoxson v. Andrews*, 66 Id. 553.

*Mandamus.* Submitted May 6, 1890. Decided June 6, 1890.

Relators applied for *mandamus* to vacate an order allowing an ex-sheriff fees for personal custody of attached property. The facts are stated in the opinion.

*Charles B. Lothrop*, for relators.

*William D. Totten* and *J. L. Boyd*, for respondent.

LONG, J. Petitioners, who are doing business in the city of Detroit, caused a writ of attachment to be sued out of the circuit court for Kalkaska county against Waldron R. Noteware and George H. Beebe, September 8, 1888, and placed the same in the hands of Myron A. Morrell, sheriff of that county, for service. Morrell, on October 2, 1888, made a return of the writ, showing that he had attached personal property of the defendants to the amount of $1,962.53. On August 27, 1889, the issue

framed in the cause came on for trial, and judgment was entered in favor of the plaintiffs.

The term of office of Morrell expired January 1, 1889, and John E. Rainbow succeeded him. Mr. Morrell retained possession of the goods attached continuously until some time in November, 1889, when the petitioners made an application to this Court for *mandamus* to compel him to turn the goods over to Rainbow, his successor, for sale on execution, which execution Rainbow then held. Morrell then held the goods, claiming a lien on them for his sheriff fees, and refused to give them up on demand, but after the service of the writ of *mandamus* delivered them over to Rainbow.[1] It appears that though the writ of *mandamus* was served some time in November, 1889, yet the goods were not received by Rainbow until some time in January, 1890, and that he then took and sold them under the execution.

In January, 1890, Morrell applied to the circuit court for Kalkaska county for an order to allow him the fees which he claimed to be due him as sheriff in and about making such seizure and the care and custody of the goods. On the hearing of that application the petitioners claimed that the sheriff was not entitled to fees for the custody of the goods, and that they had already paid him more than the fees which he was legally entitled to charge. On February 25, 1890, the circuit judge made the following finding:

"In the matter of the claim of Myron A. Morrell, lately a sheriff of said county, for compensation for services in caring for goods in his hands as sheriff of said county.

"I am of the opinion that such services are not among those for which the statute provides and establishes fixed fees, but that they are such services as a sheriff should render when the circumstances would justify, using the

---

[1] See *Fletcher v. Morrell*, 78 Mich. 176.

care and caution which were used in this case, and that in such cases he should be paid what his services are reasonably worth. Had he failed to care for said goods, and by his negligence have allowed them to become damaged or stolen, he would have been liable for his negligence.

"It was urged before me that one of the elements to be considered in fixing the amount which should be paid to said Morrell was the responsibility resting upon him owing to the value of the goods, his official position, etc. I do not think that these matters should be considered. He would only be responsible in case of negligence, or a failure to exercise ordinary and reasonable care and diligence in looking after the stock of goods. His official position does not make him an insurer of the property in his hands. The only question which I think should be considered, is, what services were rendered? Were such services necessarily performed in the discharge of his duties as an officer, and what is the value?

"I believe from the evidence in this matter that an order should be entered allowing said Myron A. Morrell the sum of $10 per month over and above all disbursements, fees for levy, etc., from the date of the levy until the time demand was made upon him by Sheriff Rainbow for the possession of said goods, and from the date when he afterwards offered to turn over said goods until they were taken from his possession, and I hereby direct such an order to be entered."

An order was entered in accordance with this finding on March 15, 1890, fixing the amount at $130 to be paid over to said Morrell out of the moneys received by Rainbow on the sale of the goods. Petition is now filed praying for a writ of *mandamus* directing the circuit judge to set this order aside, in which it is averred that the petitioners have paid said Morrell all the expenses he has incurred in and about the care and custody of said goods, all rents of the premises where the same were stored, and all the fees to which he was entitled under the laws of this State for his services in making such attachment, and that the allowance made by the court is solely for the

personal services of said Morrell in looking after the goods after the same were seized. It is also averred in the petition that the circuit court had no authority or jurisdiction to make such allowance beyond such amounts as are fixed and allowed to sheriffs by the laws of the State. On filing the petition, an order to show cause was issued, and the answer of the respondent is now here. The facts set up in the petition are substantially admitted; but the circuit judge makes further return, and says—

"That, pursuant to notice to the parties interested, a motion for the allowance of the fees was made by the attorneys of Mr. Morrell on the 15th day of January, 1890; that said Morrell came personally into court, and was there represented by his attorneys, William D. Totten and J. L. Boyd; that Charles C. Jencks, one of the firm of Fletcher, Jencks & Co., also came into court, and was represented by Willis B. Perkins, attorney of record in his case against Noteware and Beebe, and by Charles B. Lothrop, attorney; that, by consent of the parties in interest, by their attorneys in open court, before me, the question as to how much money the said Morrell was entitled to receive for his fees and services and moneys expended was submitted to me, said circuit judge, for my determination; that, pursuant to such submission, Myron A. Morrell was sworn in his own behalf, and Willis B. Perkins was sworn as a witness for him, and said Charles C. Jencks was also sworn in behalf of Fletcher, Jencks & Co., and the parties were fully examined and cross-examined by the attorneys for the respective parties; but no question was then raised before the circuit judge as to his jurisdiction or power to enter the order of which relators now complain, although it' was urged that said court had no authority to grant petitioner's items for custody and care of said stock of goods. It was claimed that relators had already paid said Morrell more than his statutory fees, and more than he was entitled to charge, but they then offered to pay him $50 additional for his care of the goods. It appeared to me that said Morrell had rendered valuable services as custodian of said goods for about fifteen months, and that he had given them more than ordinary care as their keeper, and that for such services as their keeper and custodian he

should be allowed a reasonable sum; and the said Fletcher, Jencks & Co. claimed to be willing to pay said Morrell such reasonable sum as this court should require them to pay, notwithstanding their objection in the matter."

It appears, further, from the return of the circuit judge, that Sheriff Rainbow sold the entire stock of goods at the sum of $700, excepting the goods allowed by law to be taken from the inventory of the stock by the defendants in the writ of attachment, amounting to $500; that on the application of Fletcher, Jencks & Co. to the court, showing that they had paid out $373.57 for rent and other expenses, the court ordered this amount paid to them by the sheriff out of the moneys arising from the sale; that the balance of the moneys arising from the sale namely, $331.83, after deducting Sheriff Rainbow's fees, the court then ordered him to hold for the purpose of satisfying whatever sum might be found due Sheriff Morrell upon the hearing of the motion in his behalf for such allowance; that under the order of March 15, 1890, determining the amount of Sheriff Morrell's fees at $130, the balance of the $331.83 was ordered to be paid over to Fletcher, Jencks & Co.

The circuit judge further returns that after his findings were announced, and before the order of March 15, 1890, was made, Charles B. Lothrop, attorney for Fletcher, Jencks & Co., was duly notified of such findings, and thereupon ordered William D. Totten, attorney for said Morrell, to get a statement of the time referred to in said findings, and draft an order for entry in said case, and assented to the entry of such order. Several affidavits are annexed to the return of the circuit judge, which he asks to have made part of his return. These affidavits tend to support the return of the circuit judge as to the appearance of the parties, and what took place on the hearing of the motion for the allowance of these amounts

to Sheriff Morrell, and also the willingness of the attorneys for Fletcher, Jencks & Co. to submit the matter to the circuit judge.

From this return it is argued by the attorneys for Sheriff Morrell, who appear in this Court in answer to the order to show cause, that the parties had a right to make a parol submission of their differences in open court, and to permit the court to determine how much Morrell was entitled to; and that, having so submitted the question, it is a good common-law arbitration, and the court, under such circumstances, had power and authority to enter the order; that, the court having exercised his discretion in fixing the amount, his award, however erroneous his decision may have been, cannot be reviewed by *mandamus.* It is also contended that the amount allowed by the court as compensation to Sheriff Morrell in the care and custody of the goods is a proper charge, though not fixed by the statute.

There are no circumstances shown in this proceeding under which the order was made which should estop the petitioners here from setting up want of jurisdiction in the court to make it. After Rainbow succeeded to the office of sheriff, an execution was taken out in the attachment suit, which had then proceeded to judgment, and placed in his hands. He made demand upon Sheriff Morrell for the goods which were being held by him under the writ of attachment. He refused to deliver them over, claiming a lien for his fees, and only did deliver them to his successor in office when required to do so under the mandate of this Court. It is not denied that he was then paid more than his statutory fees. He made a petition, however, for compensation as custodian to the court, and the plaintiffs in the writ were cited to appear. They appeared and contested the claim, and, as the court says in the return,—

"They urged that the court had no authority to grant petitioner's items for custody and care of said stock of goods."

After the findings of the court were announced, it is claimed that Mr. Lothrop, attorney for Fletcher, Jencks & Co., directed Mr. Totten, who appeared for Sheriff Morrell, to draft an order covering the findings. This would not estop Fletcher, Jencks & Co. from moving to set the order aside. There can be no estoppel unless a party is misled to his prejudice. *Palmer v. Williams*, 24 Mich. 328; *De Mill v. Moffat*, 49 Id. 125. To entitle a party to insist upon an estoppel, he must be able to show that the other party has done something, or represented something, which has had the effect to deceive and mislead him, and which would render it inequitable for the right of such other party to be enforced against him. *Crane v. Reeder*, 25 Mich. 303. In the present case Mr. Lothrop was there protesting that the court had no authority to allow these charges, and the mere fact that he directed the drawing of the order under the findings would not estop his clients from setting up the claim made here, for until such order was entered he was powerless to move, and as soon as the order was entered he proceeded to have it vacated, as he had the right.

The only question for consideration, therefore, is whether Sheriff Morrell is entitled to compensation for his personal custody of the goods attached by him. He has been fully paid the fees allowed by the statute, and all disbursements made for rent, etc. His custody of the goods, and liability for safe-keeping, is in the nature of a bailment. He becomes bailee for all the parties interested. He must use due diligence to keep them safely to satisfy the execution, but he is not an insurer, and is not, like a common carrier, answerable for a loss of the goods by fire.

He is not responsible beyond reasonable watchfulness, precaution, and the employment of proper means of security. He should, however, be held to greater care than owners usually take of their property, for the reason that goods so held are more liable to be molested than goods not under seizure. It was said in *Moore v. Westervelt*, 27 N. Y. 239, that a sheriff in such case is bound to exercise that degree of care and diligence which is required of a bailee for hire, and could not be held to any greater liability.

It is not claimed or pretended that a keeper was necessary, or that one was employed. He was to hold the goods under the attachment until they were demanded to satisfy the execution issued upon a judgment which was thereafter obtained. They were stored waiting that event. His statutory fees and rent of the building were paid. The right of a sheriff to fees is derived from and depends upon the statute. At common law, he could not lawfully receive them. *Mitchell v. Reynolds*, 10 Mod. 139. For the purpose of inducing diligence on the part of sheriffs in executing process, the statute 29 Eliz. chap. 4, was passed, by which the taking of fees for executing certain process was impliedly permitted, and yet that statute made it unlawful for the sheriff to take of any person more or other consideration than allowed by the statute. The statutes of this State have fixed the compensation of sheriffs in the execution of process, and provide the compensation to be paid in service of attachment. How. Stat. § 9017. It is therein provided that—

"Any sheriff or other officer who shall demand or receive any greater fees or compensation for performing any of the services hereinbefore mentioned than is hereinbefore allowed shall, in addition to all other liabilities now provided by law, be liable to the party injured or paying such illegal fees in three times the amount so

demanded, received, or paid, together with all costs of suit," etc.

The matter of compensation to be paid for such services is exclusively within the province of the Legislature, and certainly the claim made by the sheriff in the present case is beyond the amount fixed by the statute. It may be equitable that the sheriff in such cases should be allowed compensation for the responsibility assumed in taking care of such property, and cases have often arisen where such claims have been made. These equitable considerations are for the Legislature, who may fix some basis for the determination of the question of just compensation, but the courts cannot go beyond the plain letter of the statute now in force. This question arose in *Genesee Co. Savings Bank v. Judge*, 54 Mich. 306, and in *Peck v. Bank*, 51 Id. 354, where these principles were very fully discussed by this Court. Similar questions have arisen in other states, and it is held that the compensation fixed by the statutes limits the amount of the fees of sheriffs, and beyond which they have no right to charge.

In *Crofut v. Brandt*, 58 N. Y. 106, it was held that—

"The poundage and fees allowed by statute to a sheriff upon an execution are in full compensation for his services and expenses in executing the writ. He is not entitled to charge for keeping and watching the property levied on, for boxing and removing the same, for storage, for cataloguing or other preparations for sale, or for auctioneer's fees; nor can he charge for premiums paid for insurance or for expenses by reason of an adverse claim to the property."

It was held in *Burk v. Webb*, 32 Mich. 182, that where the law fixes the sheriff's fees for services, as in the case of services for collection on executions, it is not competent for him to make an agreement with the debtor for

any additional compensation.   In *Wilcoxson v. Andrews,*
66 Mich. 553, it was also held that—

"An agreement between a constable and judgment
creditor, for the payment of a sum in excess of the stat-
utory fees allowed for serving an execution, is void as
against public policy; nor can such officer evade the stat-
ute by recovering on a *quantum meruit.*"

The circuit judge in the present case sought to fix the
equitable rights of the parties to the controversy, but
there was no warrant of law for the order made, and it
must be set aside.   The writ will·issue as prayed.

The other Justices concurred.