*In re* FEES OF COURT OFFICER

(HARBOUR TOWNE MARINA ASSOCIATION v GEILE)

Docket No. 174473. Submitted September 16, 1996, at Grand Rapids.
Decided March 14, 1997, at 9:00 A.M.

Harbour Towne Marina Association brought an action in the Muskegon Circuit Court against Gerald A. Geile and obtained a money judgment against him. When Geile refused to voluntarily pay the judgment, the plaintiff's attorney had George Noble, a court officer, search for and attempt to liquidate Geile's property in satisfaction of the judgment debt. During the course of his search for Geile's property, Nobel located a boat that had been owned by Geile but that had been conveyed by him to his daughter on the day before the adverse judgment was entered, attached a writ of execution to the boat, gave a copy of the writ to the manager of the marina at which the boat was found, seized the boat's log, and prepared a notice of sale. Upon learning of several possible fraudulent transfers by Geile, the plaintiff commenced a separate action to have those sales set aside. The second action resulted in a compromise settlement of the original judgment. When Nobel learned of the settlement, he sent a bill for his services that included a charge for time spent investigating the location of Geile's assets and for mileage, fees, and a percentage of the settlement. The plaintiff filed a motion to determine Nobel's fees, claiming that because Nobel was a court officer and had not successfully levied against any of Geile's property, he was entitled by statute only to certain statutory fees and to a portion of the mileage claimed and that because Nobel was trying to collect fees greater than those allowed by law, it was entitled by statute to recover three times the excess sought by Nobel. The court, Michael E. Kobza, J., found the fees to be reasonable and awarded Nobel the full amount sought. The plaintiff appealed.

The Court of Appeals *held*:

1. Because a court officer has no common-law right to charge fees for performing his public duties, the fees chargeable for those duties are strictly statutory. Those statutory fees may properly be taxed as costs against a judgment debtor. However, a judgment creditor is not prohibited from entering into a contract with an

individual for the purpose of assistance in the collection process, although the cost of such contractual investigatory and collection services is not a chargeable cost that may be taxed against the judgment debtor.

2. The bill submitted by Nobel included both claims for statutory fees arising out of services rendered by virtue of his office and claims for fees arising out of a contractual relationship with the plaintiff's attorney. Only the former, the claims for statutory fees, were properly before the trial court in its consideration of the motion to determine fees. The trial court should have dismissed the claims for contractual fees without prejudice to Nobel's bringing of a separate contract action for those fees.

3. The plaintiff's assertion that Nobel is not entitled to the statutory percentage of the settlement as a fee pursuant to MCL 600.2559(1)(j), (k); MSA 27A.2559(1)(j), (k) because he was unsuccessful in making levies against Geile's property is not supported by the record. Nobel found and executed a writ of execution against a boat that Geile sold to his daughter during the pendency of the original action. Although Nobel prepared a notice of sale with respect to the boat, the sale of the boat was canceled at the request of the plaintiff's attorney. Nobel's failure to file a return of execution did not invalidate the levy. Indeed, where, as here, the sale of the levied property is held in abeyance, there is nothing to return because the writ is neither satisfied nor unsatisfied. Further, because the levy was made during the period during which the return was supposed to be returned, the return could be returned after the designated period. Although title of the boat had been transferred to Geile's daughter by the time the levy was made, that boat was a proper subject of seizure and levy because the transfer of title took place under circumstances that suggest that the transfer of title was for the purpose of defrauding creditors such as the plaintiff. Accordingly, because the boat was the proper subject of a levy at the time the levy was made and the boat remained in Nobel's constructive possession at the time of the settlement, Nobel was entitled to the statutory fee of a percentage of the settlement.

4. The full amount of the statutory fee of a percentage of a settlement is payable to a court officer who successfully levies against any personal property of a debtor. That fee is calculated on the basis of the amount of settlement achieved, not on the basis of the known or unknown market value of the seized property.

5. The statutory fees to which Nobel is entitled are the percentage fee, the actual and reasonable expense of taking the boat (but not the expenses incurred in locating the boat), mileage calculated

pursuant to statute at the rate set for state civil service employees, and the specific service fees set by statute. On remand, the trial court must determine those fees and enter an appropriate order.

6. Neither the common law nor public policy precludes a court officer from entering into a contract with a judgment creditor to perform investigative and other services beyond those of serving process and executing writs that are an incident of that office and for which statutory fees have been set. However, payment for such additional contracted services must be sought in a separate contract action.

7. Because certain of the fees requested by Nobel may be properly payable in a separate contract action, it is impossible to determine at this time from the record on appeal whether there has been any overcharge that would warrant the application of the penalty provision of MCL 600.2559(5); MSA 27A.2559(5).

Vacated and remanded.

1. COSTS — COURT OFFICERS — COMMON LAW — STATUTORY FEES — JUDGMENT DEBTORS — TAXABLE COSTS.

A court officer has no common-law right to charge fees for performing public duties; the fees that a court officer may charge for discharge of those public duties are strictly statutory; the statutory fees of a court officer may properly be taxed as costs against a judgment debtor (MCL 600.2559; MSA 27A.2559).

2. JUDGMENTS — JUDGMENT DEBTS — JUDGMENT CREDITORS — CONTRACTS — JUDGMENT DEBTORS — TAXABLE COSTS.

A judgment creditor is not prohibited from entering into a contract with an individual for the purpose of assistance in the collection process; however, the cost of such contractual investigatory and collection services is not a cost that may be taxed against the judgment debtor.

3. EXECUTION — LEVY — RETURN.

The failure to file a return of a writ of execution within the period specified for the filing of the return does not render a levy invalid where the levy itself was made within the period specified for the filing of the return.

4. EXECUTION — LEVY — RETURN

A return of a writ of execution is to be filed when the sale of the property that is subject to a levy has been conducted (MCL 600.6010; MSA 27A.6010).

5. EXECUTION — LEVY — SALE — RETURN.

A sale of property that is subject to a levy arising out of a writ of execution need not take place during the period in which the return of the writ is to be made where the property remains in the constructive possession of the court officer who made the levy.

6. EXECUTION — LEVY — FRAUDULENT CONVEYANCES.

Property that has been fraudulently conveyed to avoid a judgment creditor is subject to a levy made pursuant to a writ of execution by the judgment creditor (MCL 566.19[1]; MSA 26.889[1]).

7. EXECUTION — LEVY — SETTLEMENT — PERCENTAGE FEE.

The full amount of the statutory fee of a percentage of a settlement is payable to a court officer who successfully levies against any personal property of a debtor; that fee is calculated on the basis of the amount of settlement achieved, not on the basis of the known or unknown market value of the seized property (MCL 600.2559[1][j],[k]; MSA 27A.2559[1][j],[k]).

8. CONTRACTS — COURT OFFICERS — JUDGMENT CREDITORS — COMMON LAW — PUBLIC POLICY.

Neither the common law nor public policy precludes a court officer from entering into a contract with a judgment creditor to perform investigative and other services beyond those of serving process and executing writs that are an incident of that office and for which statutory fees have been set.

*Mika, Meyers, Beckett & Jones* (by *David W. Charron*), for the plaintiff.

*Muller, Muller, Richmond, Harms, Meyers & Sgroi* (by *William R. Farran*), for George Nobel.

Before: GRIBBS, P.J., and MARKEY and T. G. KAVANAGH* , JJ.

GRIBBS, P.J. Plaintiff appeals as of right from the circuit court order determining a court officer's fees for postjudgment collection efforts. We vacate the circuit court order and remand for further proceedings.

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

## I. FACTUAL BACKGROUND

Plaintiff Harbour Towne Marina Association obtained a judgment in the amount of $170,564 against defendant Gerald A. Geile in the Muskegon Circuit Court. Defendant did not pay, so plaintiff initiated collection efforts through its attorney's office. Those efforts were only mildly successful, so plaintiff had a court officer search for and attempt to liquidate property of the debtor.

Plaintiff learned of several possible fraudulent transfers and filed a separate action to set them aside. As a result of the second lawsuit, plaintiff and defendant reached an agreement to compromise the claim for $100,000.

Upon hearing of the settlement, the court officer sent a bill through a private "paralegal" firm for certain fees, investigative costs, and a percentage of the settlement amount. Organized by type of expense, the court officer's summary on the bill sought reimbursement of the following:

TOTAL HOURS
50 @ $25 HR = $1250.00
MILES 935 @ 31 = 289.85
COPIES = 6.00
PHOTOS = 10.00
LUNCH = 10.94
BOAT CHECKS = 30.00
SERVICE FEE = 20.00
7% OF FIRST $1000 = 70.00
3% OF BALANCE = 2970.00
_____

FINAL TOTAL= $4656.79

Plaintiff filed a "Motion to Determine Court Officer's Fees," challenging the fees as exceeding stat-

utory limits. Plaintiff maintained that the court officer had not successfully levied against any property of the debtor and that he was entitled only to certain minimal statutory fees ($20 for each levy attempt) and a portion of the mileage claimed.[1] Plaintiff also argued that the officer was trying to collect fees greater than those allowed by law, thereby entitling it to recover three times the excess from the court officer pursuant to a statutory penalty provision.[2]

The circuit court found the fees to be reasonable and awarded the officer the full amount sought. On appeal, plaintiff challenges (1) the percentage fee awarded, which was based on the conclusion that the officer had successfully levied against property of the debtor; (2) the investigative costs awarded, which were a combination of the officer's (and his agents') time and expenses; and (3) the court's resultant decision that plaintiff was not entitled to treble damages because the officer had not attempted to collect excessive compensation.

## II. PROCEDURAL IRREGULARITY

As will be discussed later, a sheriff or court officer had no common-law right to charge fees for performing his public duties. Any right to compensation

---

[1] Mileage expenses related to serving court papers are compensable, but only at the state civil service rate (29½ cents a mile, according to the schedule attached to plaintiff's brief on appeal). The court officer has attempted to collect a higher rate, 31 cents, which apparently was the rate for federal income tax purposes. The officer also apparently billed his actual mileage, rather than mileage from the courthouse as authorized by MCL 600.2559(3); MSA 27A.2559(3) (renumbered as subsection 4 after a 1994 amendment of the section by 1994 PA 133). The officer has conceded that the billed amount is improper.

[2] MCL 600.2559(5); MSA 27A.2559(5), now MCL 600.2559(6); MSA 27.2559(6).

beyond the officer's normal salary was considered purely statutory. Statutory fees are generally minimal. They do not reflect the actual effort that might be devoted to a legal process, but rather the fees reflect the Legislature's wisdom concerning which flat-rate fees may be assessed under the statute and, therefore, may properly be considered taxable costs against a judgment debtor.

It should come as no surprise that judgment creditors may devote substantial resources to determining a debtor's assets available for collection and that professionals are often hired to conduct those investigations. The law does not prohibit such arrangements, nor does it seek to limit the fees charged for such services as between the investigator and the hiring party or attorney. Thus, two compensation systems may run parallel to each other during collection efforts: minimal statutory fees that may be added to the judgment, and higher investigative fees absorbed by the creditor.

This case involves both types of fees, although the circuit court apparently did not recognize the dichotomy and treated all of the requested fees as being statutory fees. This confusion was caused by the plaintiff's filing of a motion to determine *statutory* fees after receiving a bill for *both types* of fees. In short—and this is the root of the procedural irregularity—this case should have been split into two parts. Statutory fees should have been determined ancillary to the underlying lawsuit. If the court officer had wished to charge additional fees for nonstatutory services that are commonly rendered during judgment collection, he should have brought a separate lawsuit for breach of contract or quasi contract that would have been tried just like any other nonpayment case.

When plaintiff's attorney filed a motion to determine the proper costs, however, the entire dispute was thrown into court as one common action.

We believe the matter should be split into two separate actions. Therefore, we vacate the circuit court's order for costs and fees, remand for a determination of the *statutory* fees that the officer may collect by virtue of his office, and dismiss the remaining claims from this ancillary action without prejudice to the court officer's right to bring a separate action for breach of contract or quasi contract, as would any unpaid creditor performing investigative services.[3] There is some question concerning whether a court officer can form a contract for fees beyond those established by statute, a matter addressed later in this opinion.

### III. COURT OFFICERS' FEES

There is a dearth of law concerning the subject of officers' fees. The two main sources are nineteenth century (and older) cases and recent treatises, two of which were written by an attorney affiliated with the law firm representing the court officer in this case.[4] Although that affiliation might normally taint the source's credibility, his treatises were written before

---

[3] By analogy, had a private investigator been retained to locate missing assets, there would be little doubt that his remedy for nonpayment would be to bring a breach of contract action in the court with appropriate jurisdiction rather than intervening in the underlying lawsuit which necessitated his services.

[4] The author in question, Steven Harms, wrote the chapter concerning collecting judgments in the Michigan Basic Practice Handbook. He also wrote a book entitled Handling the Collection Case in Michigan: A Creditor's Guide (2d ed). In addition, other authors prepared continuing education course materials that were compiled in book form, called Hoffman et al, Collecting Judgments in Michigan (National Business Institute, Inc., 1993).

this case arose and not in contemplation of this dispute. The publications also were written from the perspective of the creditor—not the court officer. Thus, we will regard those publications as we would view other learned treatises.

Plaintiff argues that a court officer had no right to compensation at common law and, therefore, a court officer's right to compensation beyond that received as a salary is based entirely in statute. The Michigan Supreme Court held in *Fletcher v Aldrich*, 81 Mich 186, 194; 45 NW 641 (1890): "The right of a sheriff to fees is derived from and depends upon the statute. At common law, he could not lawfully receive them." It is an oversimplification to say, however, that a court officer is never entitled to compensation beyond statutory fees. The Court's decision in *Fletcher* was based on the statement of the common law found in *Mitchell v Reynolds*, 88 Eng Rep 660; 10 Mod 130 (1711). In *Mitchell*, the court was asked to determine the propriety of a bond given to secure a baker's agreement not to reenter the trade after selling his establishment. The court compared the situation "to bonds taken by sheriffs for their fees." It was noted that "the sheriff by the common law was to take no fees at all *for doing his office*; and therefore as these fees are given by Act of Parliament, the Act must be strictly pursued." *Id.* at 664; emphasis added. Thus, the common law prohibited a sheriff from taking additional fees "for doing his office."

In the case at bar, the court officer performed a variety of services, including some not covered by his statutory duty: his "office," and, therefore, he may be entitled to compensation outside the common law's prohibition and beyond the statute's constraints.

Although plaintiff has disputed this proposition in its written brief, at oral argument it conceded that the court officer had also served as a messenger when he drove from Grand Rapids to file court papers in Muskegon on behalf of plaintiff's counsel. Plaintiff admitted that those services could be considered part of a separate transaction for which separate compensation might be owing. We believe that concession is correct, but additional services performed by the officer should be similarly regarded.

Thus, we will address in subsection A those expenses expressly authorized by statute to which a court officer is entitled by virtue of his office and in subsection B the propriety of a separate action under contract or quasi contract for nonstatutory compensation that any person (such as a private investigator, messenger, or private process server) performing similar services would be entitled to receive. We wish to stress that because we believe any action for nonstatutory compensation should be separate from this case, we do not intend our discussion on factual points to constitute res judicata or law of the case. Instead, we wish only to set forth our views concerning this matter. We are cognizant that there has been very little formal evidence in the case, and we believe any decisions on remand should be based on the facts to be developed there, rather than on our interpretation of the sketchy evidence currently before us.

A. STATUTORY FEES

The starting point for this case is the statutory fee provision. Fees are set by MCL 600.2559; MSA 27A.2559:[5]

(1) The following schedule shall apply as fees for process served out of the circuit court, the probate court, the district court, or any municipal court by any person authorized pursuant to this act or supreme court rule to serve process:

(a) For personal service of a summons and complaint in a civil action, along with supporting documents, for each defendant, $10.00 plus mileage.

(b) For personal service of an affidavit of account and statement, for each defendant, $10.00 plus mileage.

(c) For a summons and affidavit in garnishment, for each garnishee and defendant, $7.00 plus mileage.

(d) For seizure and delivery of goods in a case of claim and delivery, $20.00 plus mileage, plus the actual and reasonable expense of taking, keeping, and delivering the goods.

(e) For receiving and filing a bond from or on behalf of a defendant in a case of claim and delivery, $2.00.

(f) For an order to show cause, $10.00 plus mileage.

(g) For a subpoena on discovery, $10.00 plus mileage.

(h) For a writ, affidavit, and bond in a case of attachment, $10.00 plus mileage.

(i) For the seizure of property in a case of attachment, $20.00 plus mileage, plus the actual and reasonable expense for taking and keeping the property.

(j) For levy under a writ of execution, $20.00 plus mileage, plus the actual and reasonable expense for taking, keeping, and sale, plus, if the judgment is satisfied prior to sale, 7% of the first $1,000.00 in receipts and 3% of receipts exceeding the first $1,000.00.

---

[5] We quote the language of the statute before its amendment by 1994 PA 133, because the services were rendered before the amendment's effective date. Fees were increased in the 1994 amendment.

(k) For sale on levy in a case of execution, 7% of the first $1,000.00 in receipts and 3% of receipts exceeding the first $1,000.00.

(*l*) For each notice of sale on levy in the case of an execution or mechanics lien posted in a public place in the city or township, $10.00 plus mileage.

(m) For a writ for the restitution of premises, $20.00 plus mileage, plus the actual and reasonable expense for moving property out of the premises.

(n) For a subpoena directed to a witness, including a judgment debtor, $10.00 plus mileage.

(*o*) For a civil bench warrant or body execution, $20.00 plus mileage, plus $10.00 per hour for the amount of time, if any, involved in executing the warrant.

(2) Upon submitting a sworn affidavit, a person who serves process out of the circuit court, the probate court, the district court, or any municipal court shall be entitled to receive a $10.00 fee for each process which has an incorrect address. This fee shall be in addition to any fee to which the person is entitled under subsection (1).

(3) Mileage allowed under subsection (1) shall be the same rate per mile, each way, as the rate allowed by the state civil service commission for employees in the state classified civil service and shall be computed by the shortest distance from the place of service to the following location:

(a) For service out of any court other than the district court, and within the same county, to the court.

(b) For service out of any court other than the district court, but outside of the county in which the process originates, to the comparable court in that county.

(c) For service out of the district court and within the same district, to the court which is the place of return.

(d) For service out of the district court, but outside of the district in which the process originates, to the place of the court in that district.

(4) The fees allowed for the service of execution and for advertising in conjunction with an execution shall be collected by virtue of the execution, in the same manner as the sum directed to be levied in the execution. If there are sev-

eral executions against the defendant, at the time of the advertising of the defendant's property, in the hands of the same sheriff or other officer, there shall be only 1 advertising fee charged on the whole, and the sheriff or other officer shall elect upon which execution he or she will receive that fee.

(5) Any person who serves process out of the circuit court, the probate court, the district court, or any municipal court and who demands or receives any greater fees or compensation for performing any of the services mentioned in this section than as allowed by this section, shall, in addition to all other liabilities now provided by law, be liable to the party injured, for paying the illegal fees, in 3 times the amount so demanded, received, or paid, together with all the costs of the action.

(6) Any sheriff or other officer who, after the fees specified by this section have been tendered, neglects or refuses any of the services required by law shall be liable to the party injured for all damages which the party sustains by reason of that neglect or refusal.

As noted earlier, statutory fees may be added to a judgment. MCR 2.625(A)(1); MCL 600.2559(4); MSA 27A.2559(4), now MCL 600.2559(5); MSA 27A.2559(5); 3 Martin, Dean & Webster, Michigan Court Rules Practice, pp 720-721. While the Legislature has imposed flat fees that might not fully anticipate the time devoted by a court officer, a legitimate purpose is served by regulating the fees that might be added to a judgment.[6]

---

[6] In addition, the statutory provision helps assure against price gouging by sworn officers. While any legally competent adult (not a party) may serve a writ of garnishment, MCR 2.103(A), executions may be levied only by sheriffs, bailiffs, and court officers, MCL 600.6001; MSA 27A.6001. Some price protection is necessary to guard against monopoly powers, a valid concern raised by plaintiff.

### 1. PERCENTAGE OF JUDGMENT

Plaintiff argues that the officer had been unsuccessful in his levies against the debtor's property and, thus, should not be entitled to the percentage fee imposed by MCL 600.2559(1)(j), (k); MSA 27A.2559(1) (j), (k). We conclude the officer successfully levied against a boat.

Defendant had owned a boat, but conveyed it to his daughter the day before the adverse judgment was entered. The court officer located the boat at a marina and questioned the marina manager about it. The marina manager told the officer that the defendant owned the boat, paid for its slip rental, and used it. The officer then attached a writ of execution to the boat, gave a copy to the marina manager, seized the ship's log, and prepared a notice of sale. When plaintiff's counsel learned of the transfer of ownership, he asked the court officer to cancel the sale and allow plaintiff's family to continue using the boat. Pursuant to this arrangement, the officer was to be notified of the boat's whereabouts at all times. Although plaintiff disputes that the officer had made a valid levy against the boat because he lacked possession, it is clear that the officer had constructive control sufficient for a levy. *Patch v Wessels*, 46 Mich 249, 251; 9 NW 269 (1881); *Grover v Buck*, 34 Mich 519, 521 (1876).

Plaintiff also argues that the levy against the boat was not complete because a return of execution was not filed with the court. It is true that a return was never filed. Although a return is part of the execution procedure, the levy occurs when the property is

seized. MCL 600.6012; MSA 27A.6012.[7] We have found no authority stating that the failure to return a writ invalidates a levy upon which a sale was not made. Plaintiff argues that *Quackenbush v Henry*, 42 Mich 75, 78; 3 NW 262 (1879), states that a levy is invalid if a return is not filed. We disagree. While the Court cast doubt concerning the nature of levied property if an inventory is not prepared, it did not go so far as to rule such a levy invalid. *Id.* at 80-81. When a detailed return has not been filed, the *Quackenbush* Court seems to have treated the breadth of the levy as an open question. In the case at bar, that open question was determined in the court officer's favor.

Plaintiff also maintains that a statute requires a return to be filed. MCL 600.6010; MSA 27A.6010[8] refers to a return being filed when a sale has been conducted. That stage was never reached in this case. The official court form relating to executions against property provides an officer with only two choices when returning a writ: certification that the writ is returned satisfied (in full or in part) or certification that the writ is returned unsatisfied because "no personal or real property of the defendant(s) could be found on which to collect the specified balance due." See Michigan SCAO Approved Forms, Form MC 19. Because neither of those provisions was truly satisfied in this case, the officer can hardly be faulted for failing to certify one or the other.

---

[7] "Whenever an execution issues against the property of any person, his goods and chattels, lands and tenements, levied upon by such execution, shall be bound from the time of such levy."

[8] "The officer *who makes any sale on execution* shall, in his return on the execution, specify the articles sold, and the sum for which each article or parcel was sold . . ." (emphasis added).

Plaintiff argues that the officer is not entitled to a percentage fee because the settlement was reached after the writ of execution had expired. The writ was issued on April 22, 1993. A return was supposed to be filed not less than twenty or more than ninety days later (July 21). MCL 600.6002(2); MSA 27A.6002(2).[9] The boat was constructively seized on May 18, and settlement occurred on September 1, 1993.

Although the writ had expired, property was still being held under constructive possession. "When an officer has begun to serve an execution issued out of any court, on or before the return day of the execution, he may complete service and return after the return date." MCL 600.6002(3); MSA 27A.6002(3). As stated above, neither of the two situations mentioned in the writ return form had occurred. The writ was not satisfied in full or in part, and the officer had not failed to find property on which to collect the balance. Rather, the property sat in an indeterminate state—a legal "limbo" not expressly contemplated by the writ form but apparently contemplated by the statute.

We do not offer an opinion concerning how long property may be held in "limbo" without disposition. The statute focuses on the fact that service of the writ is pending and offers no guidance concerning how long that process can last. In *Burk v Webb*, 32 Mich 173, 182-183 (1875), an execution was begun in August 1872 but did not conclude until wheat was

---

[9] "Executions shall be made returnable not less than 20, nor more than 90, days from that date" (i.e., the date of receipt by the officer).

harvested in the latter half of 1873. The Supreme Court found no defect in that delay.[10]

Finally, plaintiff attacks the levy as insufficient because it maintains that the property did not belong to the debtor, having been conveyed to his daughter before judgment was entered. The collection statutes contemplate that property may be seized for which ownership is disputed, as was the case here. For example, the Uniform Fraudulent Conveyance Act provides:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser;
> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
> (b) *Disregard the conveyance and attach or levy execution upon the property conveyed.* [MCL 566.19(1); MSA 26.889(1) (emphasis added).]

The Revised Judicature Act provides in separate sections:

> *Whenever there is any reasonable doubt as to the ownership* by a judgment debtor of any personal property, or as to their liability to be taken upon an execution, the officer holding such execution may require of the judgment creditor sufficient security to indemnify him for taking such personal property thereon . . . . [MCL 600.6009; MSA 27A.6009 (emphasis added).]

---

[10] The statute expressly allows a levy to continue until thirty days after the growing crops are ripe for harvest. MCL 600.6036; MSA 27A.6036. A separate section, MCL 600.6051(2); MSA 27A.6051(2), imposes a five-year time limit on a real estate levy. Thus, the Legislature has contemplated that a levy may exist for an extended period in some circumstances.

> A party or witness examined under these provisions [relating to examination of persons holding property of the debtor] may not be excused from answering a question on the ground that his answer will tend to show him guilty of the commission of a fraud, or prove that he has been a party or privy to, or knowing of a conveyance, assignment, transfer, or other disposition of property for any purpose . . . . [MCL 600.6110(3); MSA 27A.6110(3).]

See also MCL 600.6128; MSA 27A.6128 (trying title to debt or property); 2 Michigan Basic Practice Handbook (4th ed, 1996 Supp), § 10.39, p 10-33.

It is true that a court officer should not be rewarded for levying against the goods of others, but here the plaintiff reasonably treated those goods as the fraudulently conveyed property of the debtor. By filing a lawsuit based on a claim of fraudulent conveyance, plaintiff is estopped from claiming that the officer was somehow acting improperly by levying against that property.[11]

Although the court officer successfully levied against the boat by constructive possession, his other efforts were not successful. His attempt to levy against shares of stock in a corporation failed because the officer seized the minutes book and not the stock certificates. MCL 600.6037; MSA 27A.6037; Uniform Commercial Code, Art 8, § 317(1), MCL 440.8317(1); MSA 19.8317(1). The officer's efforts to seize a tractor were unsuccessful because he never even located the property.

---

[11] When plaintiff filed the second lawsuit, counsel's signature on the complaint certified that, to the best of his "knowledge, information and belief formed after reasonable inquiry, the pleading [was] well grounded in fact." MCR 2.114(D)(2) as it read before its 1995 amendment.

Plaintiff has argued that, even if the officer success-
fully levied against the boat, he is not entitled to a
percentage fee based on the entire settlement but is
instead entitled only to the proportional fee associ-
ated with the boat's value. That view may be appro-
priate when real estate is involved. See *Peck v City
Nat'l Bank of Grand Rapids*, 51 Mich 353; 16 NW 681
(1883). In *Peck*, the Court noted that an officer does
not physically possess real property and does not
incur any risk or responsibility until sale is made. *Id.*
at 359. That same rationale does not apply to
personalty.

In addition, the value of goods cannot be deter-
mined with precision absent a sale. But the reality of
collection practice is that the key to getting a debtor
to pay a judgment is not necessarily the price a
forced sale might bring, but rather the value of the
seized property to that debtor at that time and place.
For example, it is common practice to have a court
officer hire a tow truck and take physical possession
of a debtor's car. Debtors frequently produce suffi-
cient cash to discharge their debts when confronted
with the prospect of their cars being towed. More
importantly for this example, debtors typically "find"
sufficient cash to discharge a debt that *exceeds* the
value of the car. The reason is well known in collec-
tion circles: a car is worth more to its owner than its
auction price. It represents the debtor's transportation
and "freedom" in our mobile society. As another
example, when a restaurant does not pay a judgment,
the common collection method is to seize its
silverware and cooking utensils. Again, the value of
these goods at auction is probably minimal, yet those
items are the lifeblood of the restaurant trade. In

either of these situations, the officer would be entitled to a percentage fee based on the settlement amount, not just on the value of the car or the utensils.

Plaintiff mentioned in its appellate brief that the various attempts to levy "led appellant's attorneys to file a second lawsuit," a reference to the fraudulent conveyance suit that resulted in the settlement. In addition, the *debtor's* attorney admitted that his client settled the second lawsuit because of the pressure put on him by the court officer. Officer Nobel's efforts put some level of pressure on the debtor and convinced him to pay $100,000 in cash when he was unwilling to pay even a penny shortly after the original judgment was rendered. The officer is not entitled to compensation under a "causation" theory as the circuit court seemed to believe. Nonetheless, the court officer also is not to be *denied* his fee under a "fairness" or "windfall" theory as plaintiff has advanced. Rather, in practice the court officer is entitled to a percentage fee if there is a successful levy against *any* property of the debtor. That percentage fee is calculated on the basis of the settlement achieved, and not on the known or unknown market value of the seized property.

### 2. ITEMIZED EXPENSES & SERVICES

We next turn to the out-of-pocket expenses charged by the officer. The hourly charges can safely be considered investigative expenses. The court officer argues that his expenses were "reasonable expenses for taking, keeping and sale" of the property under MCL 600.2559(1)(j); MSA 27A.2559(1)(j). We disagree. There may have been some minimal expenses associ-

ated with taking the boat, and those expenses can be compensable under the statute to the extent they are actual and reasonable. The majority of expenses, however, were investigative costs involving property never found or seized, such as the tractor, corporate stock, and other "dead-end" investigations. We will not endorse broad fees that, again, can be added to the judgment in normal situations (those not involving a liquidated settlement). The unambiguous terms of the statute provide that reasonable expenses may be awarded only for property that is taken, kept, or sold. Moreover, the statute grants fees only for the expenses associated with the taking, keeping, or selling of the property—not the investigative costs that led to that property's discovery.

The circuit court's ruling that all the fees were proper under the statute was erroneous. We therefore remand for a determination of the fees specifically allowed by statute: the percentage fee, the actual and reasonable expense of taking the boat, any compensable mileage as calculated under the civil service rate then in effect, and other service fees specifically mentioned in the statute. There is no statutory basis for the other itemized expenses, including out-of-pocket expenses.

### B. NONSTATUTORY BASIS FOR RECOVERY

Only court officers and sheriffs can serve writs of execution, MCL 600.6001; MSA 27A.6001; MCR 3.103(D), so there is no doubt the officer received the writ of execution by virtue of his position as a public officer. Nonetheless, there are other services that the court officer performed that went beyond the service of a writ of execution. For example, the officer acted

as a go-between in negotiations, served as a messenger, served papers that may be served by any legally competent adult, and investigated assets. These types of services can be performed by persons other than sheriffs or court officers.

Other persons (such as private process servers, messengers, or private investigators) could recover under contract-based theories for performing these types of tasks. We must address whether, as a public officer, Mr. Nobel is precluded from doing the same. We find existing case law to be distinguishable and contrary to common practice. It has been broadly stated that public policy limits a public officer's compensation to the amounts authorized by statute. *Boster v First Nat'l Bank*, 5 F Supp 15 (ED Mich, 1933) (notaries). In *Peck v City Nat'l Bank, supra*, p 355, the Supreme Court confirmed that an officer could not collect fees under quantum meruit. Legal theories based on contract were not expressly mentioned, however. In *Burk v Webb, supra*, p 182, the Court stated that it would violate public policy if an officer could contract with the *debtor* for additional compensation. A contract with a *creditor* was not expressly mentioned. As noted earlier, the officer's entitlement to compensation "for doing his office" is rooted in statute. *Mitchell, supra.* Here, the court officer performed services that were beyond his "office." We believe neither the common law nor modern public policy precludes additional compensation under these circumstances.

Denying a court officer (or the officer's agents) compensation for time and expenses would ignore general collection practices. It is generally accepted in the collection business that the judgment creditor's

attorney and the court officer will have ongoing communication concerning possible assets and the tactics needed to properly seize and secure the property. It is not at all unusual for a court officer to act as a go-between in settlement negotiations, inasmuch as the officer's efforts often generate more pressure on the debtor. Officer Nobel performed that service in this case when he relayed offers and counteroffers between the parties.[12] Sometimes, the attorney has to hold the officer's hand through the process; at other times, an experienced court officer knows what to do and is able to make recommendations to the attorney. 2 Michigan Basic Practice Handbook, *supra*, § 10.34, p 10-29; Hoffman et al, Collecting Judgments in Michigan (National Business Institute, Inc., 1993), p 170. In either case, the officer's involvement does not come without costs; after all, the statutory $20 service fee hardly covers an officer's time on a typical levy. There are many expenses involved, such as renting a truck and laborers, which a litigant would be expected to bear. See Harms, Handling the Collection Case in Michigan, A Creditor's Guide, § 9.16, p 205; Hoffman et al, *supra*, p 170. In practice, however, the officer often provides the necessary money or reserves necessary equipment as a matter of expediency—with the attorney's permission—and then seeks reimbursement later. While certain expenses may be properly taxed as costs, the court officer still expects reimbursement of these expenses without having to conduct a forced sale. This relationship naturally raises the possibility of a contractual relationship (express

---

[12] Acting as a go-between serves an important public policy by encouraging settlement of claims without the trauma of a public sale of the debtor's property.

or implied) in which a court officer would be reimbursed for reasonable expenses and the value of his time.

Plaintiff's position that the officer is entitled to statutory fees—and no more—for service above and beyond the call of duty ignores the fact that, by all outward appearances, this collection effort fit the standard pattern. Although counsel did not give the officer a list of assets, he directed the officer in his attempt to locate assets and told him which ones to seize.[13] *The officer had to do the legwork because counsel did not.* The officer and counsel were in constant communication about possible assets; plaintiff's attorney even told the officer to postpone selling a boat that had been conveyed by the debtor (possibly fraudulently). It seems apparent that the officer rendered services beyond those minimum steps anticipated by the statutory fee schedule, and he did so at counsel's direction. Thus, a contract theory of recovery is plausible.[14] At least one state, Rhode Island, has upheld an implied contract theory to allow a constable to recover expenses. *McCarthy v Hughes*, 36 RI 66; 88 A 984 (1913).

Routine practice affects how public policy is viewed. While concerns about price gouging and unseemly practices by public officers remain valid, we believe public policy should not deprive a public

---

[13] A writ of execution is general. Unlike a search warrant, it does not tell the officer which assets to seize, but rather commands the officer to seize *any* property of the debtor necessary to satisfy the judgment. See Michigan SCAO Approved Forms, Form MC 19.

[14] By analogy, a homeowner might justifiably argue that he did not hire a landscaper to cut his lawn and that the landscaper was mistaken when he did so, but the argument would fail if the same owner went outside and told the landscaper which areas to trim.

officer of the types of nonstatutory compensation other persons can collect for performing nonstatutory services (that is, services beyond the bare minimum contemplated by the duties of the office). If an attorney hires a court officer to perform extra services, the attorney should have to pay for the extra services whether the officer serves as a negotiator, messenger, runner, or investigator. If an attorney hires a court officer to conduct only the minimal services contemplated by statute, the attorney will be expected to pay only the statutory fees. The true scope of Officer Nobel's retention is a question of fact to be determined in a different forum. Thus, any claim for compensation that the circuit court finds exceeds statutorily authorized amounts shall be dismissed from this ancillary action without prejudice to the right of the court officer or the paralegal firm to bring a separate action under traditional theories of contract or quasi contract.

### IV. PENALTY PROVISION

It is apparent from our discussion that certain fees billed by the paralegal firm exceeded the officer's statutory right of compensation. Plaintiff argues that the officer should be penalized for demanding excess payment. The circuit court found it unnecessary to reach this issue in light of its resolution.

We are unable, on the record before us, to calculate any overcharge, nor do we necessarily consider the paralegal firm's bill to be a demand by the officer (his connection with that firm is not entirely clear on this record). In light of our determination that a separate action may exist in the officer's favor, the computa-

tion of a penalty, if any, should be delayed until after the total compensation package is determined.

We strongly urge court officers to prepare segregated billings in the future to avoid confusion or the perception of an illegal demand and to assist in the determination of properly taxable costs versus costs to be absorbed by the creditor.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.